OPINION
On May 9, 2000, Edward H. Zupancic, Lake County Auditor, and Madison Local School District ("Madison") filed a complaint in the Lake County Court of Common Pleas against Carter Lumber Co. ("Carter Lumber") and Madison Township/Groveport-Madison Local School District ("Groveport"). The complaint averred that Carter Lumber was a taxpayer with personal property located in the Madison Township, Lake County, Ohio taxing district. It was further averred that as the result of a mistake, personal property of Carter Lumber that should have been applied to the benefit of Madison was applied to the benefit of Groveport. Specifically, Madison averred that for the years 1992 through 1995, personal property taxes derived from Carter Lumber's personal property located in the Madison taxing district, totaling $49,721.16, were erroneously paid to Groveport. Madison informed the Franklin County Auditor and Groveport of this error and requested return of t he tax proceeds. However, Groveport refused this request.
Madison sought a declaration that the personal property at issue was located in the Madison taxing district and that $49,721.16 should have been allocated to Madison. Further, Madison set forth a claim for unjust enrichment and sought restitution from Groveport of $49,721.16, plus prejudgment interest. Groveport moved for a change of venue to Franklin County and on August 31, 2 000, the Lake County Court of Common Pleas granted this motion.
The parties filed motions for summary judgment. On October 24, 2001, the Franklin County Court of Common Pleas rendered a decision granting Madison's motion for summary judgment and denying Groveport's motion for summary judgment. A judgment entry was journalized on this same date. Groveport (hereinafter "appellant") has appealed to this court, assigning the following e rrors for our consideration:
Assignment of Error No. 1:
 THE COMMON PLEAS COURT ERRED IN GRANTING JUDGMENT FOR MADISON-LAKE. THE DOCTRINE OF UNJUST ENRICHMENT DOES NOT APPLY TO THE RECOVERY OF PERSONAL PROPERTY TAXES THAT WERE ACTUALLY LEVIED BY THE GROVEPORT-MADISON LOCAL SCHOOL DISTRICT[.]
Assignment of Error No. 2:
 THE COURT ERRED IN ALLOWING MADISON-LAKE TO CHALLENGE PERSONAL PROPERTY TAX ASSESSMENTS MADE BY THE OHIO TAX COMMISSIONER AGAINST THE CARTER LUMBER CO. BECAUSE THOSE ASSESSMENTS WERE FINAL, CONCLUSIVE, AND BINDING; AND NO COURT HAS SUBJECT MATTER JURISDICTION TO REVIEW THE LEGALITY OF THOSE ASSESSMENTS.
Madison (hereinafter "appellee") has filed a cross-appeal, a ssigning the following as error:
 THE COURT BELOW ERRED IN OVERRULING PLAINTIFF-CROSS APPELLANTS' REQUEST FOR PRE-JUDGMENT INTEREST AFTER THE COURT ENTERED JUDGMENT ON PLAINTIFF-APPELLANTS' UNJUST ENRICHMENT CLAIM FOR A SPECIFIC AMOUNT OF DAMAGES WHICH WAS CLEAR AND CERTAIN AT ALL TIMES.
Appellant's first assignment of error is dispositive of all the matters in this appeal. In essence, appellant contends that summary judgment in favor of appellee on its unjust enrichment claim was inappropriate. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Andersen v. Highland House Co. (2001), 9 3 Ohio St.3d 547,548.
The facts in the case at bar are not in dispute. As indicated above, Carter Lumber erroneously indicated on its tax return(s) that the subject property was located in appellant's taxing district when it was actually located in appellee's taxing district. Accordingly, the tax commissioner assessed the personal property to appellant's district and issued assessment certificates to the Franklin County Auditor. The Franklin County Auditor applied the tax rate levied by appellant to such property, and Carter was billed accordingly. Appellant received the proceeds from such levy/levies in the years at issue. Appellee subsequently became aware of the error(s), and the present suit e nsued.
The issue before this court is a question of law — whether or not appellee can maintain a claim for unjust enrichment under the facts presented. The parties cite to several cases that purportedly support their respective positions. The first case is Bd. of Edn. of Lyme Twp. v. Bd. of Edn. of Special School Dist.
No. 1 of Lyme Twp. (1886), 44 Ohio St. 278. In Lyme, the special school district made a levy for school purposes in the years 1870 through 1875, and the auditor placed such levy on the duplicate against all lands within the district. However, the auditor mistakenly omitted the properties of a railway and of a telegraph company. The township district also made a levy for school purposes in the same years, and the auditor mistakenly placed such levy on the railway and telegraph companies' properties that were l ocated within the special school district.
The special school district sought to recover the taxes from the township district. The Supreme Court concluded that the taxes received by the township district were not produced by any levy made by the special school district, that there was no privity between the two districts and that the action could not be m aintained. Id.
Appellant contends Lyme controls and precludes appellee from maintaining the present suit for unjust enrichment. Essentially, appellant asserts that given the process of assessing property and levying taxes thereon, the taxes appellee seeks to recover were not produced by any levy of appellee's but, rather, were produced by a levy of appellant's on the subject property. Therefore, under Lyme, appellee cannot recover the proceeds derived from the s ubject property in the years in question.
Appellee contends that the holding in Lyme has since been limited by the Supreme Court in Indian Hill v. Atkins (1950), 153 Ohio St. 5 62. The syllabus of Indian Hill states:
 1. Generally, where a person pays money to another in the erroneous belief, induced by a mistake of fact, that he owes a duty to so pay it, whereas such duty is owed to a third person, the transferee, unless a bona fide purchaser, is under a duty of restitution to the third person.
 2. That rule of law may be applied, even if its application results in the imposition of liability on a municipal corporation, where the person seeking such restitution was never in a position to insist on compliance with the laws relating to the mandatory formalities required of a municipal corporation in the making of contracts.
 3. Where the proceeds of intangible personal property taxes collected from a taxpayer who resided in and was domiciled in one municipality are distributed to another municipality because of a mistaken belief that such taxpayer was a resident of the latter municipality, a cause of action may exist in favor of the first municipality against the second municipality for recovery of the proceeds so distributed. [Emphasis sic.]
For the reasons that follow, we find that contrary to appellee's assertion, Indian Hill did not limit the holding in Lyme. Rather, the holding in Indian Hill was based on distinguishable facts and, if anything, Indian Hill recognized the continuing validity of Lyme.
In Indian Hill, a taxpayer who lived in Indian Hill, a municipal corporation, filed tax returns on intangible personal property. Indian Hill at 564. Such returns indicated that the taxpayer resided in Cincinnati. The Hamilton County Auditor accepted Cincinnati as the proper taxing district and as a result, Cincinnati received proceeds from the taxpayer's taxes that should have gone to Indian Hill. Indian Hill sought recovery against C incinnati for such taxes.
The Supreme Court indicated that the issues before it were: (1) whether one municipality could have restitution from another municipality of money paid to the latter where such money should have been paid to the former; and (2) assuming the former municipality could have such restitution, whether the General Assembly had provided against such recovery. Id. at 566. The Supreme Court set forth the general rule of law as to restitution in paragraph one of the syllabus, as quoted above. The Supreme Court then noted that Cincinnati had argued that Lyme applied and required a holding that such general rule of law did not apply under the facts. Indian Hill at 567. The Supreme Court summarized the facts of Lyme and quoted the language from Lyme that the taxes received by the township district had not been produced by any levy made by the special district. Indian Hill at 5 67. The Supreme Court then stated:
 If the taxes involved in the Lyme Township case were not produced by any levy made by the board seeking recovery on account thereof, it is difficult to see what right that board would have to the proceeds of such taxes.
Id. at 567-568.
Distinguishing the case before it from Lyme, the Supreme Court noted that in Indian Hill the intangible taxes collected from the taxpayer and received by Cincinnati had been levied against the taxpayer by the General Assembly for the benefit of the municipality in which the taxpayer had his residency — Indian Hill. Id. at 568. In other words, the Supreme Court was noting the distinguishing factor between Indian Hill and Lyme — that the intangible taxes in Indian Hill, for all intents and purposes, had been levied by Indian Hill (by way of the General Assembly) and not Cincinnati whereas in Lyme, the complaining party had not levied the subject taxes. Therefore, the Supreme Court concluded that Lyme was inapplicable. Hence, Indian Hill did not limit Lyme; it distinguished Lyme. Further, Indian Hill reaffirmed the logic used in Lyme — that a taxing authority cannot claim taxes w hen such taxes were not produced by a levy of such authority.
The Supreme Court in Indian Hill then went on to address the second issue — whether the General Assembly had provided against the recovery sought by Indian Hill. Cincinnati had argued that a remedy would amount to an invasion by the courts into the field of taxation. Id. at 570-571. The Supreme Court declined to address this issue because it determined that the matter before it did not involve the assessment of property for taxation or the levy or collection of taxes. Id. at 571. Rather, the Supreme Court stated that the case before it involved the distribution, in accordance with the direction of the General Assembly, of the c ollected proceeds of taxes levied by the General Assembly. Id.
Hence, it is clear that Indian Hill did not limit the holding in Lyme. Indeed, the taxes at issue in Indian Hill were completely different from the taxes involved in Lyme. The taxes in Indian Hill were intangible personal property taxes that had been levied by the General Assembly based on a standard tax rate. They were not taxes levied locally by an individual school district with individual tax rates, such as in Lyme. The matter in Indian Hill involved the distribution of such proceeds pursuant to the General Code at that time, which directed that such proceeds go to the municipality in which the taxpayer had residency. Of course, Lyme involved the actual levying of taxes by local school districts. Thus, the facts in Indian Hill are clearly distinguishable from t he facts in Lyme and, accordingly, Lyme remains good law.
Appellee next points to the case of Rocky River Bd. of Edn. v. Fairview Park Bd. of Edn. (1989), 63 Ohio App.3d 385, which appellee asserts is directly on point and supports its position. Appellee is correct that Rocky River involves similar facts. However, for the reasons that follow we find that Rocky River is not dispositive of the matter before us and, thus, we decline to a pply its ultimate holding to the case at bar.
In Rocky River, certain commercial establishments located in the Rocky River School District taxing district mistakenly listed their property as being in the Fairview Park School District taxing district on their annual returns. Id. at 386. Hence, the Cuyahoga County Auditor "allocated" personal property tax proceeds from such commercial establishments to Fairview Park. Id. Rocky River sought restitution from Fairview Park of $178,890.50 in tax proceeds erroneously received by Fairview Park. Id. at 386, 388. Summary judgment was granted in favor of Rocky River, and Fairview Park appealed. The court of appeals affirmed the trial court's j udgment in favor of Rocky River on its unjust enrichment claim.
The fact pattern in Rocky River is on point with the facts herein. However, the court of appeals' decision did not address the exact issue presented in the case at bar. The only issues the court of appeals addressed in Rocky River were whether or not Fairview Park had an equitable defense to the unjust enrichment claim and which statute of limitations applied to such a claim. Id. at 387-388. As to the statute of limitations issue, the court of appeals stated that a claim for unjust enrichment was recognized in Indian Hill and that such court had not specified the applicable statute of limitations. Rocky River at 388. The court of appeals determined that Rocky River had filed its complaint within the six-year statute of limitations for q uasi-contractual claims. Id.
In finding the six-year statute of limitations applied to Rocky River's unjust enrichment claim, the court of appeals rejected Fairview Park's claim that R.C. 2723.01's one-year statute of limitations applied. Id. R.C. 2723.01 states that common pleas courts may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them but that no recovery may be had unless the action is brought within one year after the taxes or assessments are collected. Citing Indian Hill, the court of appeals determined that such statute of limitations did not apply because the matter did not involve the assessment of property for taxation or the levy or collection of taxes; rather, it involved the distribution of tax money that had already been c ollected. Rocky River at 388-389.
The Rocky River court never mentioned the Lyme case and, therefore, did not address the distinguishing factors between Lyme and Indian Hill as we discussed previously. Further, the court in Rocky River erred in stating that the matter before it did not involve the assessment of property for taxation or the levying of taxes. In State ex rel. Rolling Hills Local School Dist. Bd. of Edn. v. Brown (1992), 63 Ohio St.3d 520, 521, decided after Rocky River, the Supreme Court stated that assessing real property for taxation includes assigning parcels to taxing districts and recording them accordingly on the tax list. While Rolling Hills dealt with the assessment of real property as opposed to personal property, the statement applies equally to the assessment of personal property used in business as such property is assessed in the taxing district in which such business is carried on, and the county auditor extends on such property the same rate of taxation that is levied upon real property in such district. See R.C. 5 711.01, 5711.13 and 319.31.
Hence, the Rocky River court erred in finding that the case before it did not involve the assessment of property or the levying of taxes. Indeed, that is exactly what was involved in Rocky River and what is involved in the case at bar. Rocky River involved the assessment and levying of taxes, not the mere distribution of taxes, and Lyme, not Indian Hill, should have been applied to preclude Rocky River's unjust enrichment claim. For reasons not apparent from the opinion, the court of appeals did not address the application of Lyme. Because the court of appeals in Rocky River erroneously stated that the case only involved the distribution of tax proceeds, even if the court had been made aware of Lyme, it likely would have applied Indian Hill and a llowed the unjust enrichment claim.
Thus, to the extent Rocky River could be read as supporting an unjust enrichment claim pursuant to the analysis in Indian Hill and despite the holding in Lyme, we decline to follow such case. Instead, we affirm our conclusion that Lyme is more on point to the facts in the case at bar and precludes an unjust enrichment claim. Our conclusion is supported by the case of Bd. of Edn. of Rolling Hills Local School Dist. v. Bd. of Edn. of Cambridge City School Dist. (1992), Guernsey App. No. 92-CA-7. Although not the case appealed to the Supreme Court in State ex rel. Rolling Hills Local School Dist. Bd. of Edn., supra, the Guernsey County case was factually related to the Supreme Court case. The Supreme Court case involved a mandamus action wherein the Rolling Hills school district sought to compel the county auditor to correct the tax list which had incorrectly omitted certain parcels that should have been assessed to the Rolling Hills taxing district. The appellate court case (hereinafter referred to as "Rolling Hills") is directly on point with the present case and correctly applied Lyme to preclude Rolling Hills' claim forrestitution.
In Rolling Hills, the Rolling Hills school district asserted that between 1985 and 1990, the Cambridge City school district received personal property tax proceeds that should have been distributed to Rolling Hills. Apparently, certain commercial establishments had erroneously listed the Cambridge school district as the taxing district on their annual returns. Therefore, the businesses were mistakenly listed on the general tax list and duplicate as having taxable personal property subject to the school levies of Cambridge. Rolling Hills sought restitution of the tax proceeds d istributed to Cambridge.
The court of appeals held that the trial court correctly relied on Lyme, which had dealt with the right of one school district to recover from another school district taxes erroneously received, and affirmed the trial court's dismissal of Rolling Hill's complaint. The court of appeals attached Lyme as an appendix to i ts opinion.
Rolling Hills correctly followed the holding in Lyme that one school district may not recover from another school district tax proceeds levied by the latter school district — even where the property from which such taxes were derived was placed on the tax list and duplicate in the wrong taxing district. We recognize that Lyme is over one hundred years old and is based on a very technical point — the fact that the complaining school district never actually levied the property at issue. Of course, the reason the school district never actually levied the property at issue was that such property had mistakenly been assessed to the w rong taxing district.
The result of such technical application seems harsh at first blush. Understandably, the trial court here determined that a remedy was deserved and based such remedy on the equitable principles set forth in Indian Hill. However, unless and until the Supreme Court determines otherwise, we are bound to follow Lyme, which is the case most on point. Further, our decision is partially based on the statutory scheme set forth by the General Assembly with regard to the way schools fund, levy and budget and the way taxes are assessed, levied and collected. Such scheme, along with the precedent of Lyme, lead us to conclude that appellee cannot maintain an unjust enrichment claim to recover the t axes already levied by appellant.
As the Supreme Court stated in DeRolph v. State (1997), 78 Ohio St.3d 193,198 and DeRolph v. State (2000), 89 Ohio St.3d 1, 6, Ohio's statutory scheme for financing public education is complex. At various stages in the process, the General Assembly has provided a right of review of certain determinations or actions. However, there appears to be no statutory remedy provided to a school district for the exact situation arising in the case at bar. One could argue, then, that a common law remedy such as the one set forth here (unjust enrichment) should be available to remedy a perceived wrong. Unfortunately, the answer is not so s imple, especially given the Lyme precedent.
The statutory scheme is such that allowing the remedy sought here would be counter to and would disrupt this complex process. Indeed, as the following narration will show, the statutory scheme does provide avenues for the correction of mistakes and sets forth a process that should help prevent the kind of mistake that occurred here. Given such complex process, the General Assembly could have specifically addressed the issue involved here had it so desired. It did not, and this court would be remiss to fashion a remedy where the legislature could have but did not. This court is by no means an expert on this complex process; however, a brief narration of some of the processes involved will illustrate our p oint.
All personal property located and used in business in Ohio is subject to taxation. R.C. 5709.01(B)(1). A taxpayer having taxable property required to be listed in more than one county (the situation of Carter Lumber) shall make a combined return to the tax commissioner listing all its taxable property in the state, in conformity with R.C. 5711.01 to5711.36, and the tax commissioner shall assess personal property in the several taxing districts in which it is required by R.C. 5711.01 to5711.36. R.C. 5711.13. Personal property used in business shall be listed and assessed in the taxing district in which such business is carried on. R.C. 5711.07. The action of the tax commissioner in assessing property is evidenced by a preliminary or final assessment certificate which must show in what taxing district and c ounty such property is assessable. R.C. 5711.24.
The tax commissioner issues assessment certificates to the proper county auditors in the manner required under R.C. 5711.25. R.C. 5711.13. On or before the second Monday of August annually, the tax commissioner shall transmit to the county auditor(s) the preliminary assessment certificates of taxpayers having taxable property in more than one county. R.C.5711.25. In essence, each preliminary assessment certificate becomes final on the second Monday of August of the second year after the certification of the preliminary assessment certificate. Id. Thus, it could be argued that under R.C. 5711.25, an assessment, which includes the assigning of property to taxing districts, cannot be challenged b eyond the date specified.
County auditors compile separate lists of the names of the companies in whose names personal property has been listed and assessed as shown on the returns and preliminary and final assessment certificates in each school district of the auditor's county. R.C. 319.29. The auditor shall certify and deliver one copy of such list to the county treasurer, and such copy shall constitute the auditor's general tax list and the treasurer's general duplicate of personal property for the current year. Id. As soon as the general tax list and duplicate of personal property are made up, the county auditor shall extend on such list and duplicate, against the amount of personal property listed in the name of each company, the same rates of taxation levied upon the real property on the tax list and duplicate of such property in the preceding year, for the purposes of the current year, and the auditor shall proceed to determine the sums to be levied upon the a mount of such personal property. R.C.319.31.
From time to time, the county auditor shall correct all clerical errors the auditor discovers in the tax lists and duplicates, including errors in the name of the taxpayer and in the valuation or assessment of property. R.C. 319.35. The term "clerical error" is an error that can be corrected by the county auditor from the inspection of certain documents and except as otherwise provided by law, any error in the listing, valuation, assessment, or taxation of real property other than a clerical error constitutes a fundamental error and is subject only to correction by the county board of revision. Id. R.C. 319.36 provides the procedure for when a clerical error, as defined in R.C. 319.35, r esults in a tax or assessment erroneously charged.
We note that for a variety of reasons, it could be argued that R.C. 319.35
and 319.36 would not necessarily apply to the situation at bar. For example, R.C. 319.36 provides for refunds, but only as to "clerical errors," which may not be the case here. In addition, where erroneous charges have already been collected, the provisions seem to only provide a remedy to the taxpayer itself, not to the school district which may not have properly r eceived the proceeds from such tax.
Added to this process is the process by which a school district budgets and receives taxes. Under R.C. 5705.03(A), the taxing authority of each school district may levy taxes annually on the real and personal property within the school district for the purpose of paying its current operating expenses and acquiring or constructing permanent improvements. All taxes levied on property shall be extended on the tax duplicate by the county auditor and s hall be collected by the county treasurer. R.C. 5705.03(C).
Each county has a budget commission and in adjusting the rates of taxation and fixing the amount of taxes to be levied each year, the commissioners shall be governed by the amount of the taxable property shown on the auditor's tax list for the current year. R.C. 5705.27. The taxing authority of each school district must adopt a tax budget for the succeeding fiscal year by January 15. R.C. 5705.28(A)(1). The tax budget must present certain information, including the amount each fund requires from the general property tax, which shall be the difference between the contemplated expenditure from the fund and the estimated receipts. R.C.5705.29(B)(2).
After the school district adopts the tax budget, such budget must be submitted to the county auditor. R.C. 5705.30. When the county budget commission has completed its work with respect to a tax budget, the commission must certify its action to the school district, with an estimate by the county auditor of the rate of each tax necessary to be levied by the school district. R.C. 5705.34. Each school district, by ordinance or resolution, must authorize the necessary levies and certify them to the county auditor before the first day of April. Id. Any person required to pay taxes on tangible personal property in any taxing district may appeal to the board of tax appeals from the action of the county budget commission which relates to the fixing of uniform rates of taxation and the rate necessary to be levied by each t axing authority. R.C. 5705.341.
Under R.C. 5705.36(A)(1), a school district must certify to the county auditor the total amount from all sources available for expenditures from each fund set up in the tax budget. The county auditor, in essence, certifies to the budget commission his or her findings regarding whether the total amount distributed to each school district from the duplicates will increase or decrease the amount available for appropriation from any fund. R.C. 5705.36. The budget commission certifies to the school district a certificate of estimated resources. Id. A school district that is dissatisfied with any action of the county budget commission may appeal to the board of tax appeals within thirty days after the receipt of the certificate or notice of the commission's a ction. R.C. 5705.37.
The total appropriations from each fund shall not exceed the total of the estimated revenue available for expenditures, as certified by the budget commission (or by the board of tax appeals in the case of an appeal). R.C. 5705.39. Further, appropriations shall be made from each fund only for the purposes for which such fund is established. Id. No school district shall make any appropriation of money except as provided in R.C. Chapter 5705. R.C. 5705.41.
The above gives merely a base understanding of the process by which a school district budgets and levies and receives taxes, and by which taxes are assessed and distributed. It can be presumed from the system set forth above that a school district either knows or should know the sources of its revenue — including sources that generate personal property taxes and the amounts thereof — and budgets accordingly. Again, the legislature has provided for the review of matters that may arise during this process, and some relate to the matter at hand. However, it does not appear that the statutory scheme provides a remedy for appellee at the stage in which appellee sought corrective action. However, the statutory scheme does seem to provide adequate controls under which the situation here could have been prevented or corrected in a timely manner.
Given the complex process briefly described above, the review processes provided thereunder, the budgeting process and information provided during such, the constraints upon school districts in making appropriations once budgeting and levying is complete, and the Lyme precedent, we conclude that as a matter of law appellee may not recover, under a theory of unjust enrichment, the tax proceeds derived from a levy by appellant on personal property, already assessed by the county auditor, collected by the county treasurer and distributed to appellant, even though the personal property was mistakenly assessed to the wrong taxing district. For this reason, the trial court erred in granting summary judgment in favor of appellee. Accordingly, appellant's f irst assignment of error is sustained.
Given our disposition of the first assignment of error, we need not reach the second assignment of error, which is rendered moot. I n addition, appellee's cross-appeal is rendered moot.
In summary, appellant's first assignment of error is sustained. Appellant's second assignment of error and appellee's cross-appeal are rendered moot. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to such court w ith instructions to enter judgment in favor of appellant.
Judgment reversed and cause remanded
with instructions.
DESHLER and BRYANT, JJ., concur.